DAVOUD RAKHSHAN, Appellant

v.

IMMIGRATION BOARD, AMERICAN SAMOA
GOVERNMENT,
Appellee

High Court of American Samoa
Appellate Division

AP No. 7-90

May 4, 1990

Before KRUSE, Chief Justice, REES, Associate Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Appellant, Asaua Fuimaono
       For Appellee, Tauivi Tuinei, Assistant Attorney General

On Motion for Stay:

       Appellant is an Iranian national who came to American Samoa on a temporary visitor's permit in 1987. The immigration authorities have apparently been attempting to deport him since mid-1988. Their failure to accomplish this objective appears to be attributable not to any particular merit in appellant's claim of entitlement to remain in the Territory, but to a series of difficulties the Immigration Board and its legal counsel have had in understanding and following the laws governing the conduct of their own proceedings.

30

This case has been before the Appellate Division of the High Court once before. In *Rakhshan v. Immigration Board*, 13 A.S.R.2d 25 (1989), we granted a stay of the Board's deportation order on two grounds: (1) the Board had not produced a complete record of its proceedings, as contemplated by A.S.C.A. § 41.0210, so that judicial review on the record was impossible; (2) although what there was of the record did suggest that the Board would have been legally authorized to deport appellant after he lost his employment in May of 1989, it was not clear that the Board would have deported petitioner on this ground in the absence of other charges that had not been proved.

We therefore granted a stay and remanded the case to the Board for further proceedings. The Board was free to deport petitioner on the ground of his loss of employment; to deport him because of the other charges, providing a record could be produced to support them; to consider further charges; or to allow petitioner to remain in the Territory.

The proceeding and order from which the present appeal is taken seem to reflect a fundamental misunderstanding of our decision in the previous appeal. The Board begins by deciding not to consider the "overstaying" charge resulting from defendant's loss of employment status in 1989. Apparently this decision was based on the Board's erroneous impression that the stay of proceedings in the earlier appeal had somehow immunized defendant from the underlying charge that he had remained in the Territory beyond the terms (i.e., length of stay and employment status) of his original permit.

The Board's decision then proceeds to order appellant's deportation on three other grounds: failing to report a change of address to the immigration authorities; making false statements in an immigration application; and being the object of a valid foreign arrest warrant.

Appellant's defense to the charge of failing to report his change of address amounts to the assertion that this is a "technicality" on which the Board is placing undue emphasis. The Board takes the position that the failure to report change of address was part of a deliberate scheme on the part of Mr. Rakhshan to evade service of an arrest warrant by immigration officials:

> [T]hey were unable to locate Mr. Rakshan [sic] for about 2 months and was later located on a mountain next to Canco Hill. Mr. Rakshan had a binocular with

31

him when he was located and . . . was about to run
away at the time of his location.

While purporting not to question appellant's "intergrity," the Board notes
that "Mr. Rakshan knew that arrest warrant were issued against him and,
intergrity and all, purposesly [sic] hide [sic] himself on the mountain."

Appellant's response is that his past experience with the
immigration authorities had convinced him his rights would be violated
if he allowed himself to be arrested. Asked by the Court why he
secreted himself instead of consulting with a lawyer about his rights,
appellant responded that he had lost confidence in his lawyer and that he
was perhaps not thinking clearly at the time.

Regardless of the motives of appellant or of the immigration
authorities, it does appear that appellant failed to report a change of
address and that this failure was wilful rather than accidental. A.S.C.A.
§ 41.0312 defines such conduct as a ground for deportation.

The other stated grounds for deportation are more doubtful. The
record does reflect that there is a valid Philippine arrest warrant issued
against appellant. Since appellant is not a Philippine citizen, however,
and since an arrest warrant is only a deportable offense when issued by
the country of citizenship, the Board does not appear likely to prevail on
this ground. See A.S.C.A. §§ 41.0615(23), 41.0616(17). Moreover, the
Board charged this offense under A.S.C.A. § 41.0615 ("excludable"
aliens) rather than under § 41.0616 ("deportable" aliens).

With respect to the charge of filing false statements, the Board
made the following finding:

During hearing [sic], Dr. Laumoli testified
that [certain statements about appellant's job prospects
and dental experience were] not true. That Mr.
Rakshan had dictated to him what to write that he
signed the letter mainly to help Mr. Rakshan and that
all these falsification was not for employment but to
help keep Mr. Rakshan here in American Samoa. Mr.
Rakshan has countered this by calling Dr. Laumoli a
liar. The fact remains that the Immigration Board had
been made a fool by both Dr. Laumoli and Davoud
Rakshan in submitting false information with intention
to mislead the Board. The Board on its own motion,

32

determines that alien Rakshan has violated ASCA 41.0313 as above.

It is probable, although not certain, that this finding satisfies the statutory standard that false statements in immigration documents be "known by [the applicant] to be false" in order to justify deportation. *See* A.S.C.A. § 41.0313. Although the apparent gravamen of the charge, making a fool of the Immigration Board, is not a statutory offense, and although the Board declines to decide whether it was appellant or the other witness who was lying, the finding that appellant submitted false information "with intention to mislead the Board" implies that appellant knew the information to be false.

In order to prevail on the merits of this appeal it is necessary only that the Board prevail on any one of the three grounds. Since it appears probable that the Board will prevail at least on the ground of wilful failure to report a change of address, it is unnecessary to decide whether the other two grounds also have merit. Appellant has not shown that he is likely to prevail on the merits of his appeal, and is therefore not entitled to a stay of execution pending the ultimate disposition of the appeal.[1]

Appellant has also asked for a stay pending the outcome of a civil action he has against the government. This is not a ground on which we can grant a stay of deportation. We have, however, already granted a temporary stay of deportation until 4:00 p.m. Thursday, May

---

[1]   We note further that the Board's misconstruction of our earlier opinion apparently caused it to discard its strongest ground for deportation. The record of this proceeding and of the prior one clearly reflect that appellant did stay in the Territory after he had lost the employment status which had been the basis of his original permit. If the Board had ever decided clearly and unequivocally that he should be deported on this ground, it would almost certainly have prevailed.

As we noted in our original opinion, A.S.C.A. § 41.0407 provides that a person who loses the status on which his permit was based "shall be deemed a person seeking to enter American Samoa from the date when he ceases to hold such status." He would then be presumed *not* to be entitled to remain in the Territory, and the presumption could only be rebutted by a showing that he satisfies *each* of the criteria set forth in § 41.0401 --- that he is of good character, has no "excludable" offenses or characteristics, has a local sponsor, is not likely to be a financial burden on Samoa, and offers a skill or expertise needed and not readily available in American Samoa. A Board finding that appellant did not meet one or more of these criteria, while not unreviewable, would be sustained in the absence of clear error. In particular, the Court has traditionally been most reluctant to substitute its own judgment for that of the Immigration Board on the question of what skills and expertise are needed in American Samoa.

10. This should be sufficient time for appellant's counsel to arrange to take his deposition. The deposition of a witness who is absent from the Territory is admissible as evidence in High Court proceedings provided (1) that the deposition was conducted in accordance with all applicable rules; (2) that the party offering the deposition has not been able to procure the attendance of the witness by process or other reasonable means; and (3) that the opposing party had an opportunity and motive to cross-examine the witness. *See* T.C.R.Ev. 804(a)(5) & (b)(1).

There is, however, one part of the Board's order from which the record does compel us to grant relief. This is the designation of Iran as the country to which appellant will be deported. Although an Iranian citizen, appellant came here from the Republic of the Philippines. The evidence taken at the hearing is to the effect that he is eligible for readmission there. There are important differences between deportation to the Philippines and deportation to Iran. If further inquiry on the part of the Board should cast doubt on appellant's eligibility to reenter the Philippines, we will hold a further hearing to determine the effects that deportation to Iran would have on appellant's ability to prosecute this appeal.

We also state herein our reasons for ordering on April 19, 1990, that the appellant be released on bail in the form of a $7,000 surety bond. Counsel for the Board stated that he had refused to accept the surety bond in lieu of a cash bail not because it was feared that the appellant would not make required appearances, and not because appellant posed any danger to any person, but in the hope that some friend of the appellant would "be reasonable" and offer to put up the money it would otherwise cost the Government to pay appellant's air fare to Iran. This is outrageous conduct, hard to characterize as anything but the official holding of a hostage for ransom. A denial of bail for such a reason to an accused burglar or child abuser would violate the constitutional rights of the accused. It is hardly appropriate that a person who is accused of failing to report a change of address should be incarcerated under circumstances in which the Government would not incarcerate one accused of a violent crime.

Finally, we note that an order of deportation has not been made *by the Attorney General* as required by A.S.C.A. § 41.0616. In many cases this may be regarded as a formality, since the Board is subordinate to the Attorney General and advised by a member of his staff. The allegations of vindictiveness and selective enforcement in this case, however, and the patent and repeated bungling by the Board and/or its

34

legal counsel, suggest that the Attorney General himself should take a hard look to determine whether the order is an appropriate exercise of the discretion vested in the Government.

The stay previously granted is modified as follows: execution of the order of deportation is stayed until 4:00 p.m. on May 10, 1990, or until the order is personally reviewed and approved by the Attorney General, whichever is later, provided that deportation shall be to the Republic of the Philippines rather than to Iran. Deportation to Iran is stayed until further order of the Court.

It is so ordered.